**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES ISELEY,** | : | **CIVIL NO. 1:CV-02-2006** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **JEFFREY BEARD, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Charles Iseley ("Iseley"), an inmate currently confined at the State Correctional

Institution at Somerset, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983

on November 5, 2002. The matter proceeds on an amended complaint (Doc. No. 76) wherein

Iseley names as defendants various Department of Corrections ("DOC") officials, employees at

the State Correctional Institution in Coal Township ("SCI-Coal"), Pennsylvania and the State

Correctional Institution in Huntingdon ("SCI-Huntingdon"), Pennsylvania, and prison medical

providers. Iseley asserts claims of denial of medical treatment in violation of the Eighth

Amendment for the following illnesses: Hepatitis-C ("HCV"); fibromyalgia, chronic fatigue

syndrome ("CFS") and rheumatoid arthritis. He further asserts violation of the Americans with

Disabilities Act ("ADA"), the Equal Protection clause, and state laws with regard to his medical

care. Presently before the Court is a motion for summary judgment filed by three of the

defendants: Prison Health Services, Inc. ("PHS, Inc."), America Service Group Inc. ("ASG,

Inc.") and Joseph Kort, M.D.[1] After careful consideration, and for the reasons that follow, the

---

[1] Also pending in this action are two (2) additional motions for summary judgment filed
by the remaining defendants in this matter. These motions will each be addressed in a separate
Memorandum and Order to be issued by the Court in due course.

motion will be granted.

## I.    Background

The incidents in the amended complaint occurred during Plaintiff's confinement at SCI-Coal Township and SCI-Huntingdon, and concern his care and treatment for the illnesses referenced above.  On July 9, 2004, Defendants Dawn Mills, Paul Roemer and Wexford Health Sources, Inc. filed a motion for summary judgment.  (Doc. No. 123.)  The Court granted the motion on the basis that collateral estoppel applied to bar Plaintiff's amended complaint.  (Doc. No. 163.)  In addition, the Court dismissed Plaintiff's amended complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim as to the remaining defendants.  On March 31, 2006, the Court denied Plaintiff's motion to alter judgment and for reconsideration.  (Doc. No. 177.)

Following Plaintiff's appeal to the Third Circuit Court of Appeals, an opinion was issued by the Third Circuit on June 27, 2007, affirming in part, vacating in part, and remanding the matter for further proceedings.  (Doc. No. 185.)  Specifically, the Third Circuit affirmed this Court's finding that collateral estoppel applied to bar the relitigation of Plaintiff's claims of deliberate indifference to his serious medical needs concerning denial of treatment for his Hepatitis-C, the DOC's protocol for Hepatitis-C treatment and required psychiatric screening, and consent forms for such treatment.  The case was remanded with regard to all of Plaintiff's other claims.  Id.

In a Memorandum and Order dated March 5, 2008, this Court clarified the issues to be considered on remand.  (Doc. No. 249.)  Specifically, the following issues are before this court: (1) failure of Defendants to treat Plaintiff's fibromyalgia, chronic fatigue syndrome and

rheumatoid arthritis as constituting cruel and unusual punishment; (2) denial of medical treatment in violation of the Americans with Disabilities Act[2] relating to all of Plaintiff's illnesses; (3) denial of medical treatment in violation of Plaintiff's Equal Protection rights relating to all of his illnesses; and (4) various state law claims.[3]

Presently pending before the Court for consideration is the motion for summary judgment filed on behalf of Defendant Kort, a doctor at SCI-Coal Township; Defendant PHS, Inc., the medical service provider to SCI-Coal Township; and Defendant ASG, Inc., the parent corporation of PHS. Only the allegations relevant to these Defendants will be set forth.

Plaintiff states that in 1998 he tested positive for HCV, a serious medical condition. (Doc. No. 76, Am. Compl. ¶ 26.) He unsuccessfully sought treatment for the condition in early 1999 and thereafter. He maintains that he was later diagnosed by a doctor as suffering from fibromyalgia, chronic fatigue syndrome, rheumatoid arthritis and degenerative disc disease. He claims to suffer from symptoms including nausea, vomiting, debilitating chronic fatigue, severe muscle and joint pain, weight loss, weakness, dizziness, abdominal pain, migraine headaches, liver damage, difficulty with urination, memory loss, insomnia and difficult doing normal everyday activities. (Id. ¶ 35.)

Plaintiff states that while incarcerated at SCI-Coal Township from 2000-2001, he was denied treatment for HCV. He claims that Defendant Kort was deliberately indifferent to his serious medical needs by intentionally failing to use valid professional medical judgment, and

_____

[2] See American s with Disabilities Act, 42 U.S.C. § 12101-12213.

[3] As such, Hepatitis-C remains an issue in this case, but only as to Plaintiff's causes of actions for violations of the ADA, the Equal Protection clause and with respect to the various state law claims.

"mechanically following the DOC HCV treatment protocol which is inadequate . . . and designed to hinder and frustrate the acquisition of adequate medical care for HCV." (Id. ¶¶ 37, 38.)

Plaintiff further contends that he was denied HCV treatment due to the policies and practices of PHS and ASG. In following these policies, Kort failed to notify him of his disability, refer him to a liver specialist, order a Hepatitis B vaccination, perform physical/mental examinations or consider treatments other than that specifically allowed by the DOC. (Id. ¶ 49.)

According to Plaintiff, Defendants refused to provide him with HCV treatment because his mental illness caused him to fall under the exclusionary criteria of the DOC HCV protocol. As such, DOC policy barred him from receiving treatment unless he signed an agreement form consenting to become a mental health patient, and waiving his privacy rights. (Id. ¶ 40.) Plaintiff refused to do so because he argues that he does not suffer from mental illness and, as such, does not fall within the exclusionary criteria of the protocol. (Id. ¶¶ 44, 45.) He claims that each day he does not receive HCV treatment, he suffers increasing damage to his liver, greater pain and future adverse health consequences. (Id. ¶ 86.) He further alleges that his condition qualifies as a disability, and that he exhausted available administrative remedies even though they were "utterly useless." (Id. ¶¶ 89, 94.)

Plaintiff also maintains that Defendants allowed his confidential medical information to be shared with others by informing various prison personnel of his medical condition and data without his permission in retaliation for his seeking treatment for the HCV. (Id. ¶ 46.) He seeks compensatory, punitive, declaratory and injunctive relief.

## II.    STANDARD OF REVIEW

Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(c); Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). In considering a motion for summary judgment, inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006).

Rule 56(c) imposes a burden on the moving party to point to an absence of evidence supporting the nonmoving party's case. Celotex Corp. v. Caltrett, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the burden shifts to the nonmoving party, who "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); Saldana, 260 F.3d at 232. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must "set out specific facts showing a genuine issue for trial." Fed. R Civ. P. 56(e)(2). Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. Id. Even so, "all that is required [by Rule 56(e)(2)] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 288-89 (1968). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993). Allegations made without any evidentiary support may be

disregarded.  Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## III.    DISCUSSION

Defendants move for summary judgment on grounds which include the following: failure to exhaust, failure to demonstrate deliberate indifference in violation of the Eighth Amendment, failure to establish a claim under the ADA and failure to establish an Equal Protection violation. In support of their motion, they submit a brief, a statement of material facts[4], and supporting evidentiary materials.  The materials submitted consist of a docket sheet from the instant action (Doc. No. 272-5); Plaintiff's medical records from SCI-Coal Township (Doc. Nos. 272-6, 272-7); and the declarations of Dorina Varner (Doc. No. 272-8) and Defendant Kort (Doc. No. 297-3).

### A.    Exhaustion

Defendants first argue that Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e prior to filing the instant action. Exhaustion of administrative remedies by an incarcerated person suing over matters arising out of his confinement is mandated by 42 U.S.C. § 1997e(a), which provides:

> No action shall be brought with respect to prison conditions under
> Section 1979 of the Revised Statutes of the United States (42
> U.S.C. 1983), or any other federal law, by a prisoner confined in
> any jail, prison, or other correctional facility until such

---

[4] Defendants' statement of facts is included as a section in their motion for summary judgment.  (Doc. No. 272 at 4-7.)

administrative remedies as are available are exhausted.

Pursuant to 42 U.S.C. § 1997e(a), the exhaustion of available administrative remedies is mandatory. Booth v. Churner, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Id. at 73, citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement. Nyhuis, 204 F.3d at 71. Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law. Jones v. Bock, 127 S.Ct. 910, 918-19 (2007). Nevertheless, "failure to exhaust is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)).

The PLRA mandates that a prisoner "properly" exhaust his or her administrative remedies before commencing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id at 2386. Such requirements "eliminate unwarranted federal-court interference with the administration of

prisons, and thus seek [ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 2387 (quoting Porter, 534 U.S. at 525.)  Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004)("[P]rison grievance procedures supply the yardstick for measuring procedural default.").  Procedural default is a question of law.  Id. at 232.

In seeking summary judgment on the basis of exhaustion, Defendants submit the declaration made under penalty of perjury of Dorina Varner, a Corrections Superintendent's Assistant in the Secretary's Office of Inmate Grievances and Appeals, and the exhibits attached thereto (Doc. No. 272-8, Varner Decl., Exs. A-E).  These submissions establish the following.

The Pennsylvania Department of Corrections has established a Consolidated Inmate Grievance Review System as set forth in DC-ADM 804.  DC-ADM 804 outlines the necessary steps for filing a grievance and taking appeals from initial grievance determinations, and provides for three levels of administrative review - (1) Initial Grievance to Facility Grievance Coordinator; (2) appeal to the Superintendent; and (3) appeal for final review to the Secretary's Office of Inmate Grievances and Appeals.  (Id., Varner Decl. ¶ 3.)

As part of Varner's job, she receives and processes appeals by inmates from their grievances pursuant to DC-ADM 804.  In reviewing the records concerning appeals filed by Plaintiff during his confinement at SCI-Coal Township and SCI-Huntingdon, Varner found that while at SCI-Coal Township[5], there were only three grievances which Plaintiff attempted to

_____

[5]  Plaintiff was confined at SCI-Coal Township from March 14, 2000 until August 17, 2000, when he was temporarily transferred to SCI-Graterford.  He was therafter returned to SCI-Coal Township on November 2, 2000, and remained there until March 21, 2001, when he was

appeal to final review relating to the lack of adequate medical care. The first was grievance #0290-00 submitted on May 10, 2000, wherein Plaintiff complained about being barred by DOC policy from receiving treatment for his chronic condition because he was beyond his minimum sentence. (Id., Ex. A at 3.) On May 26, 2000, Grievance Coordinator Sewell responded to the grievance by informing Plaintiff he was ineligible to begin HCV treatment under the criteria of the DOC policy because he had less than one (1) year to his minimum sentence, and treatment takes longer than one (1) year to complete. (Id. at 2.) On June 28, 2000, Sewell sent a memo to Superintendent Gillis clarifying her response to Plaintiff's grievance in anticipation of an appeal that Plaintiff would pursue with Gillis. (Id. at 1.)

Although Plaintiff attempted to file an appeal to the Secretary's Office of Inmate Grievances and Appeals regarding grievance #0290-00, the appeal was not accepted because Plaintiff had never first filed an appeal from the initial grievance to the Superintendent's Office. (Id., Varner Decl. ¶ 5.) Based on such, Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to grievance #0290-00.

Plaintiff also filed a second and a third grievance with respect to the lack of adequate medical care at SCI-Coal Township. Grievance #47-01 concerned the matter of medical personnel announcing Plaintiff's medical condition on the block, and grievance #79-01 was with regard to the treatment of his Hepatitis C. Although it appears that Plaintiff did appeal the denial of his initial grievances to the Superintendent, his appeals to the Secretary's Office were denied as incomplete because Plaintiff failed to include all necessary documents with his appeals.

---

transferred to SCI-Huntingdon. (Doc. No. 272-6 at 2, 8.) He remained at SCI-Huntingdon until April 4, 2002. (Doc. No. 272-8, Varner Decl. at ¶ 4.)

Pursuant to DC-ADM 804, any inmate appealing a grievance to final review must provide the Secretary's Office with all documentation relevant to the appeal. (Id., Exs. B, C.) Based on the foregoing, Defendants Kort, PHS, Inc. and ASG, Inc. maintain that they are entitled to summary judgment because Plaintiff has failed to exhaust the remaining claims against them.

Plaintiff opposes Defendants' motion by submitting a brief and his own declaration made under penalty of perjury with attached exhibits. (Doc. No. 334.) The exhibits consist of two (2) DOC documents pertaining to grievance #0290-00 (Id., Exs. 1, 2); a copy of 37 Pa. C.S.A. §93.12 entitled "Prison Medical Services Program" (Id., Ex. B); and a copy of Grievance Officer Sewell's initial response to grievance # 47-01 (Id., Ex. C).[6] Plaintiff also seeks to incorporate the brief, declaration and exhibits he submitted in opposition to the Corrections Defendants' pending motion for summary judgment as part of his response to the instant motion. (Doc. No. 335; Ex. A.)

With regard to grievance 0290-00, Plaintiff states in his declaration that he did file an appeal with Superintendent Gillis, which was denied. In support of his assertion, he attaches two exhibits. The first is a memo from Jeffrey Beard, Secretary of the DOC, to Superintendent Gillis. The subject of the memo is grievance #0290-00. (Doc. No. 334, Pl. Decl., Ex. 1.) Beard expresses his concern regarding the issue of the denial of Hepatitis C care to Plaintiff because he

---

[6] Pursuant to M.D. Pa. L.R. 56.1, the papers opposing a motion for summary judgment shall include a separate statement of material facts responding to the numbered paragraphs set forth in the statement submitted by the moving party and shall included references to the parts of the record that support the statements. While Plaintiff does not submit a separate statement, he does appear to set forth statements of fact within his declaration that completely contradict those facts contained in Defendants' statement of facts. Because Plaintiff proceeds pro se in this matter, the Court will liberally construe his declaration to also include his opposing statement of facts. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

is within one year of possible release, and seeks an informed opinion as to the likelihood of Plaintiff's release on parole within said period. Beard states that he is returning the grievance for review by Gillis' staff and requests him to provide the medical department with a professional opinion regarding the likelihood of Plaintiff's release on parole within one year.

Plaintiff next submits a copy of Gillis' response to Beard's request - a memo to Wilma Sewell, Correctional Health Care Administrator - as his second supporting exhibit. The subject of the memo is "Grievance No. 0290-00" and it contains Gillis' determination that Plaintiff has enough time remaining on his sentence to complete the Hepatitis C treatment program. (Id., Ex. 2.)

Plaintiff does not provide an actual copy of the appeal he claims he submitted to the Superintendent from the denial of initial grievance #0290-00. However, the exhibits Plaintiff submits clearly demonstrate that the issue grieved was certainly presented to and considered by the Superintendent. Accordingly, the Court finds that summary judgment is not warranted with regard to Defendants' claim of failure to exhaust this grievance.

With regard to grievances #0047-01 and 0079-01, the Court also rejects Defendants' request for the entry of summary judgment on the basis of failure to exhaust. Defendants claim that Plaintiff's appeals of these grievances to the final level were rejected as incomplete because he failed to submit copies of all necessary documents. Plaintiff contends that this level of the administrative remedy process was not available to him because Defendants prevented him from utilizing it. Specifically, Plaintiff submits evidentiary materials which establish that he attempted to exhaust his grievances to the final level with the Secretary's Office, but that he was barred from photocopying access because he was confined in the Restricted Housing Unit. He

submits copies of the appeals he filed to the Secretary's Office with respect to the grievances. (Doc. No. 335, Pl. Decl., Ex. 6 at 3-5.) He also submits various inmate requests/letters he wrote to the Secretary's Office, as well as other prison officials, attempting to obtain copies of the necessary documents or use of a photocopier to perfect his appeals. (Id., Exs. 5, 6.) In these documents, Plaintiff explains that because he is confined in the RHU he is barred from photocopier access for non-legal documents, and therefore is unable to attach copies. Plaintiff also submits a letter he received from the Secretary's Office dated March 6, 2001, regarding grievance # 0047-01 in response to his letter explaining the inability to submit copies. (Id., Ex. 7.) Quite simply, Plaintiff is informed of the necessity of copies to pursue the appeal, and that his confinement in the RHU is "not our problem." He is further informed that if he continued to write to the Secretary's Office regarding this matter, his letters would be "filed without action." (Id.)

An inmate must take advantage of all administrative remedies available to him. See Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002.) An administrative remedy may be found to be unavailable where a prisoner is prevented by prison authorities from pursuing the prison grievance process. Brown, 312 F.3d at 112 (noting that prison security officials told inmate he must wait to file a grievance until the investigation was complete); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000)(finding that inmate put on grievance restriction).

In the instant case, there is undisputed evidence in the record demonstrating that Plaintiff was prevented from accessing a photocopier to make the required copies to complete his grievance appeals to the Secretary's Office, despite all of his efforts. Preventing or not permitting Plaintiff to make the copies necessary to perfect his appeals therefore made the

administrative remedy process unavailable to him. As such, the Court will also deny

Defendants' request for summary judgment on the basis of exhaustion with respect to grievances

#0047-01 and #0079-01.

**B.      Eighth Amendment Medical Care Claims**

In order to state an Eighth Amendment medical claim, a plaintiff must show "(I) a serious

medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to

that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003); see

also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

A prison official acts with deliberate indifference to an inmate's serious medical needs

when he "knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837

(1994). Thus, a complaint that a physician or a medical department "has been negligent in

diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

under the Eighth Amendment. . ." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Accordingly, a "medical decision not to order an X-ray, or like measures, does not

represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107.

"[A]s long as a physician exercises professional judgment his behavior will not violate a

prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d

Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is

not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir.

1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give

rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

In Rouse, 182 F.3d 192 (3d Cir. 1999), the Court of Appeals for the Third Circuit set forth the standard necessary to establish a claim for deliberate indifference to a prisoner's medical needs. The Court stated:

> The Eighth Amendment prohibits the imposition of unnecessary and wanton infliction of pain contrary to contemporary standards of decency. In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976), the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated. The Court articulated the standard to be used: In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. Id. at 106, 97 S.Ct. 285. Therefore, to succeed under these principles, plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious.... It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference." As the Estelle Court noted: "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind,'" Id. at 105, 97 S.Ct. 285... Deliberate indifference, therefore, requires obduracy and wantonness. . . which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. . . .

Id. at 197 (some internal citations and quotations omitted).

Plaintiff alleges the denial of medical treatment for the following illnesses: fibromyalgia, chronic fatigue syndrome, rheumatoid arthritis and Hepatitis-C. Defendants move for summary judgment with respect to Plaintiff's claims. They first point out that the Third Circuit Court of

Appeals has already decided that collateral estoppel bars Plaintiff's Eighth Amendment medical care claims with regard to Hepatitis-C.[7] (Doc. No. 185.) They further contend that summary judgment is warranted with respect to the other illnesses in that the record fails to reveal any deliberate indifference on the part of Defendants in that: (1) Plaintiff never sought treatment for fibromyalgia and rheumatoid arthritis during his incarceration at SCI-Coal Township and (2) although Plaintiff complained of fatigue while at SCI-Coal Township, his complaints were evaluated and there were no indications he was suffering from CFS. In support of their arguments, Defendants submit the medical records of Plaintiff while confined at SCI-Coal Township (Doc. Nos. 272-6, 272-7), and the declaration of Defendant Kort (Doc. No. 297-3). They also rely on the declarations of Wilma Sewell, DOC Health Care Administrator and John Sidler, Chief Licensed Psychologist at SCI-Coal Township. (Doc. Nos. 126, Exs. G, J.)

According to Defendants' submissions, Plaintiff was transferred to SCI-Coal Township on March 14, 2000. (Doc. No. 272-6, Ex. B at 2; Doc. No. 125, Ex. G, Sewell Decl.) Upon his arrival, Plaintiff reported a history of asthma, arthritis and Hepatitis-C to the medical department. (Id., Ex. B). He was seen in the medical department on March 15, 2000, March 20, 2000, April 12, 2000 and April 13, 2000 with complaints unrelated to the issues in this action. (Id., Ex. B at 2-3.) Plaintiff was again seen on April 20, 2000 in the medical department by a physician's assistant for complaints including fatigue and an upset stomach. He was prescribed Motrin and

<hr/>

[7] The Third Circuit affirmed this Court's finding that Plaintiff's Eighth Amendment medical care claims against Defendants Mills, Roemer and Wexford regarding the denial of HCV treatment , the HCV protocol and the required psychiatric screening were barred by collateral estoppel. In the Third Circuit's opinion filed on June 27, 2007, the Court further rejected the notion that the remaining Defendants would be precluded from raising collateral estoppel. (Doc. No. 185, at 6, n. 3.)

laboratory testing was ordered.  (Id. at 3.)

On May 2, 2000, Plaintiff was again seen in the medical department and complained of joint pain, weakness, fatigue, nausea, abdominal pain and dizziness.  A physician's assistant ordered that Plaintiff return for further evaluation.  (Id. at 4.)  On May 5, 2000, Plaintiff was seen and evaluated by Defendant Kort with regard to his complaints of fatigue.  His Hepatitis-C condition was discussed at length, as well as treatment for this condition and the possible complications therefrom.  (Id.)  Plaintiff indicated that he did wish to receive Hepatitis-C treatment.  As such, Kort ordered laboratory testing and a psychological evaluation.  (Id.)

Plaintiff was again seen in the medical department on May 10, 2000, but for treatment unrelated to the claims in this action.  On May 19, 2000, he advised Dr. Kort that he intended to have his medical records reviewed by his own doctor to obtain a second opinion about whether he should be treated for Hepatitis-C.  (Id.)  He was seen in the medical department on June 2, 2000, June 11, 2000, July 5, 2000, August 2, 2000 and August 7, 2000, for treatment unrelated to the instant allegations.[8]  (Id. at 5-7.)

On August 17, 2000, Plaintiff was temporarily transferred to SCI-Graterford, but returned to SCI-Coal Township on November 2, 2000.  (Id. at 8.)  No complaints were made at that time regarding the issues in this case.  On November 22, 2000, blood was drawn from Plaintiff with respect to his Hepatitis-C.  (Id.)  Because the laboratory performed a qualitative rather than a quantitative viral load on the blood taken, Dr. Kort ordered the performance of quantitative

---

[8]  These visits all appear to be related to Plaintiff's asthma condition.

laboratory testing.[9]  (Id.; Doc. No. 297-3, Kort Decl. ¶ 6.)

Plaintiff was seen again in the medical department on December 1, 2000, for treatment unrelated to the instant allegations.  On December 7, 2000, he refused to have blood drawn for the performance of the quantitative testing necessary prior to the start of treatment for Hepatitis-C.  (Doc. No. 272-6, Ex. B at 8.)  He again refused the blood test the following day, and Defendant Kort advised Plaintiff of the nature of his illness and the effects that may result from his refusal to accept the prescribed treatment.  (Id. at 9; Doc. No. 297-3, Kort Decl. ¶6.)

On January 3, 2001, a physician's assistant and Wilma Sewell went to Plaintiff's cell to explain the importance of the laboratory work-up for the Hepatitis-C protocol.  Plaintiff refused to speak with them.  (Id.; Doc. No. 126, Ex. G, Sewell Decl. ¶ 26.)  On January 19, 2001, Plaintiff agreed to the Hepatitis-C serology testing.  (Doc. No. 272-6 at 10.)  The quantitative testing was ordered, and the blood was drawn on January 23, 2001.  (Id.)  On January 30, 2001, Plaintiff was seen in the medical department for treatment unrelated to the allegations in this case.

On February 2, 2001, Defendant Kort was forced to postpone Plaintiff's Hepatitis-C treatment because Plaintiff would not submit to a psychological evaluation as required by the DOC policy prior to the commencement of Hepatitis-C treatment.  (Id.; Kort Decl. ¶ 6.)  Specifically, Plaintiff refused to take the Beck Depression Inventory which was to be administered by John Sidler.  (Id.; Doc. No. 126, Ex. J, Sidler Decl.)  On February 16, 2001, Plaintiff was seen in the medical department, and asked questions about the Hepatitis-C

---

[9]  The qualitative report only indicates the presence or absence of Hepatitis-C in the blood, which was already known.  The quantitative testing indicates the number of virus per milliliter of blood.

treatment. Physician's Assistant Brian Brown attempted to respond to Plaintiff's questions and educate him, however he informed Brown that "he is done." It was noted in Plaintiff's medical record that his Hepatitis-C would continue to be monitored. (Id. at 11; Kort Decl. ¶ 6.) The only additional entry in the medical records at SCI-Coal was on March 1, 2001. On this date, Plaintiff's Hepatitis-C illness was assessed, and it was noted that it would continue to be monitored. He also received treatment for his asthma condition. (Id. at 12.) On March 21, 2001, Plaintiff was transferred to SCI-Huntingdon.

Based on the foregoing, Defendants seek summary judgment on the Eighth Amendment medical care claims regarding the remaining illnesses in that there is no evidence in the record of any deliberate indifference on their part. There is no evidence that Plaintiff ever complained of or sought treatment for fibromyalgia or rheumatoid arthritis while at SCI-Coal Township. Further, although the medical records do reveal that Plaintiff complained on several occasions of being tired, he was provided with medical evaluation and testing regarding his complaints, and there was no indication that he was suffering from chronic fatigue syndrome.

In opposing Defendants' motion, Plaintiff sets forth two arguments. The first is that the Eighth Amendment medical care claim with respect to the Hepatitis-C condition is still pending. It has previously been decided, however, that collateral estoppel operates to bar Plaintiff's Eighth Amendment complaints related to Hepatitis-C. (See Doc. Nos. 247, 249.) The second argument advanced by Plaintiff is that he did seek treatment from the moving Defendants for CFS, rheumatoid arthritis and fibromyalgia, but that the Defendants intentionally refused him treatment, and altered his medical records to conceal these alleged diagnosed conditions. (Doc. No. 334, Pl. Opp. Br. at 3-6.) In support of this argument, Plaintiff submits his own declaration.

wherein he argues that Defendants either failed to record in his medical records, or altered his records, to conceal his diagnosis and complaints relating to the above conditions. (Doc. No. 334, Ex. A, Iseley Decl. ¶¶ 2, 4.) He then proceeds to state the converse of each factual statement set forth by Defendants with respect to his medical treatment while at SCI-Coal Township. For example, where Defendants state that on December 7, 2000, Plaintiff refused to have blood drawn, Plaintiff states "[o]n December 7, 2000 he did not refuse to have blood drawn." (Id. ¶ 11.) Although Plaintiff attaches several exhibits to his declaration, none of them pertain to the Eighth Amendment medical care issues. He submits no additional evidentiary materials to support his Eighth Amendment claims.

It is well-established that the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256. Specifically, the party opposing summary judgment in his response, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Saldana, 260 F.3d at 232 (citing Fed. R. Civ. P. 56(e)). Conclusory, speculative allegations in plaintiff's affidavits and moving papers, without more, in the face of documentary evidence, is insufficient to create a genuine issue of fact and defeat summary judgment. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)(the non-moving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); Dantzler v. Beard, No. 05-1727, 2007 WL 5018184, *8 (W.D. Pa. Dec. 6, 2007)(conclusory allegations contradicted by documentary evidence cannot be accepted as true).

Beyond Plaintiff's bare assertions, there is nothing in the record to suggest deliberate

indifference on the part of Defendants to any serious medical need of Plaintiff. There is no evidence in the medical records or otherwise to support Plaintiff's contentions that he was diagnosed with, suffered from and failed to receive treatment from Defendants for chronic fatigue syndrome, rheumatoid arthritis and fibromyalgia. Additionally, there is no evidence to suggest that Defendants made any misrepresentations or omissions in the medical records. Rather, Plaintiff simply attempts to defeat Defendants' properly supported summary judgment motion with his conclusory, self-serving declaration, and nothing more. For these reasons, summary judgment will be granted with respect to the remaining Eighth Amendment medical claims.

### C.    ADA claims

Plaintiff alleges that his conditions qualify as disabilities. (Doc. No. 74, Am. Compl. ¶ 89.) He claims that his rights pursuant to the ADA were violated when he was not provided with information and medical care for his disabilities. (Id. ¶ 98.)

The ADA prohibits the exclusion of otherwise qualified participants from any program or benefits on account of their disability. 42 U.S.C. § 12132. Title II of the ADA states, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, a claim under the ADA requires that: (1) the plaintiff has a disability; (2) the plaintiff is otherwise qualified for the program sought or would be qualified if the defendant made reasonable modifications to the program, and (3) the plaintiff was excluded from the program solely by reason of his or her disability. See Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1009

(3d Cir. 1995). Title II of the ADA applies to state prisons. <u>Pennsylvania Dep't of Corr. v.</u>

<u>Yeskey</u>, 524 U.S. 206, 210 (1998); <u>Brown v. Pennsylvania Dep't of Corr.</u>, 290 Fed. Appx. 463,

467 (3d Cir. 2008).

Plaintiff's argument that the denial of treatment for his ailments violated the ADA fails.

Even assuming that Plaintiff is disabled within the meaning of the ADA, there is no evidence in

the record that he was excluded from any program on the basis of his disabilities. Rather, he

claims that he was denied or provided inadequate medical treatment for his disabilities, which is

not encompassed by the ADA's prohibitions. <u>See</u> <u>Iseley v. Beard</u>, 200 Fed. Appx. 137, 142 (3d

Cir. 2006); <u>Bryant v Madigan</u>, 84 F.3d 246, 249 (7th Cir. 1996)(holding that "the [ADA] would

not be violated by a prison's simply failing to attend to the medical needs of its disabled

prisoners ... [t]he ADA does not create a remedy for medical malpractice.") Accordingly,

summary judgment will be granted with respect to the ADA claims.

**D.      Equal Protection claim**

In the complaint, Plaintiff alleges that his equal protection rights were violated when he

was denied medical care because of his race by Defendant Paul Roemer, M.D., a physician at

SCI-Huntingdon. (Doc. No. 76, Am. Compl. ¶¶ 73, 100.) Without unnecessary elaboration,

summary judgment will be granted with respect to this claim in favor of the moving Defendants.

Plaintiff's equal protection claim does not relate to the medical care and treatment provided by

Defendants at SCI-Coal Township. Plaintiff specifically alleges that his equal protection claim

stems from incidents occurring at SCI-Huntingdon. The instant Defendants only provided

medical treatment to Plaintiff during his incarceration at SCI-Coal-Township.

**E.      State claims**

Plaintiff also includes in his complaint several state law claims against moving Defendants. Pursuant to 28 U.S.C. § 1367, the district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. In the pending action, the Court has found summary judgment warranted with regard to each of the federal claims raised by Plaintiff against the moving Defendants.

The decision whether to decline to exercise supplemental jurisdiction is left to the sound discretion of the court, which focuses on whether the dismissal of the pendent claims best serves the principles of judicial economy, convenience, fairness and comity. Annulli v. Panikkar, 200 F.3d 189 (3d Cir. 1999); Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). In the instant action, Plaintiff risked dismissal of his supplemental claims when he filed suit in the federal district court and invoked the court's discretionary supplemental jurisdiction power. Also, as noted in Annulli, comity favors allowing the state court to hear Plaintiff's state law claims. While discovery has been conducted in the instant case, any discovery could be used in the state courts. The only real consideration is with respect to the applicable statute of limitations in that this action was filed in 2002. However, Congress anticipated this issue, and addressed it in the supplemental jurisdiction statute, 28 U.S.C. § 1367(d). This section ensures that Plaintiff's state law claims will not be considered time-barred so long as he reasserts them in state court within 30 days of the dismissal of this action. Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000); Austin v. Beard, No. 07-cv-1833, 2008 WL 2944871, *9 (M.D. Pa. July 31, 2008). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff shall have the opportunity to pursue those claims in a Pennsylvania

court of competent jurisdiction , if he so chooses.  An appropriate Order will follow.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES ISELEY,** | : | **CIVIL NO. 1:CV-02-2006** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **JEFFREY BEARD, et al.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW,** this 15th day of June, 2009, upon due consideration of the motion for summary judgment filed by Defendants Kort, PHS, Inc. and ASG, Inc., and for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1.  Defendants' motion for summary judgment (Doc. No. 272) is **granted** with respect to all claims except the state law claims. The Clerk of Court shall defer entering summary judgment on behalf of Defendants Kort, PHS, Inc., and ASG, Inc. until the conclusion of this case.

2.  Plaintiff's remaining state law claims are **dismissed without prejudice** to Plaintiff pursuing said claims in state court in accordance with 28 U.S.C. § 1367(d).

S/ Yvette Kane
_____
YVETTE KANE, Chief Judge
Middle District of Pennsylvania