IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES ISELEY, | : | CIVIL NO. 1:CV-02-2006 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JEFFREY BEARD, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

Charles Iseley ("Iseley") is formerly a Pennsylvania Department of Corrections ("DOC") inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983 on November 5, 2002.[1] Named as defendants are various DOC officials, employees at the State Correctional Institution in Coal Township ("SCI-Coal"), Pennsylvania and the State Correctional Institution in Huntingdon ("SCI-Huntingdon"), Pennsylvania, and prison medical providers. He asserts claims of denial of medical treatment in violation of the Eighth Amendment for the following illnesses: Hepatitis-C ("HCV"); fibromyalgia, chronic fatigue syndrome ("CFS") and rheumatoid arthritis. He further asserts violation of the Americans with Disabilities Act ("ADA"), the Equal Protection clause, and state laws with regard to his medical care. Motions for summary judgment filed by three groups of Defendants have all been granted, and the case is closed. Presently before the Court is Iseley's motion for reconsideration of the Court's Memorandum and Order dated June 15, 2009, granting the motion for summary judgment filed by the group of Defendants consisting of Dr. Kort, Prison Health Services, Inc. ("PHS, Inc.") and American Service Group Inc. ("ASG Inc."). (Doc. No. 352.) Also pending is Iseley's motion to hold this

---

[1] Iseley completed his sentence and was released from prison in January 2010. He now resides in Philadelphia, Pennsylvania.

case in suspense (Doc. No. 362) and Defendants' motion for leave to file a sur-reply brief with respect to Plaintiff's motion for reconsideration. After careful consideration and for the reasons that follow, the motion to hold the case in suspense will be denied, Defendants' motion to file a sur-reply brief will be granted and Iseley's motion for reconsideration will be denied.[2]

**I.     Background**

The incidents in the amended complaint occurred during Plaintiff's confinement at SCI-Coal Township and SCI-Huntingdon, and concern his care and treatment for the illnesses referenced above. The Court will assume familiarity by parties with the lengthy procedural and factual history of this case. As such, only those facts pertaining to the instant motion will be discussed herein.

At all relevant times, Defendant Kort was a doctor at SCI-Coal Township; Defendant PHS, Inc., the medical service provider to SCI-Coal Township; and Defendant ASG, Inc., the parent corporation of PHS. Plaintiff states that in 1998 he tested positive for HCV, a serious medical condition. (Doc. No. 76, Am. Compl. ¶ 26.) He unsuccessfully sought treatment for the condition in early 1999 and thereafter. He maintains that he was later diagnosed by a doctor as suffering from fibromyalgia, chronic fatigue syndrome, rheumatoid arthritis and degenerative disc disease. He claims to suffer from symptoms including nausea, vomiting, debilitating chronic fatigue, severe muscle and joint pain, weight loss, weakness, dizziness, abdominal pain, migraine headaches, liver damage, difficulty with urination, memory loss, insomnia and difficult doing normal everyday activities. (Id. ¶ 35.)

---

[2] Iseley has also filed motions for reconsideration with respect to the grant of summary judgment in favor of the other two groups of Defendants. These motions will each be addressed in separate opinions to be issued by the Court in due course.

Plaintiff states that while incarcerated at SCI-Coal Township from 2000-2001, he was denied treatment for HCV. He claims that Defendant Kort was deliberately indifferent to his serious medical needs by intentionally failing to use valid professional medical judgment, and "mechanically following the DOC HCV treatment protocol which is inadequate . . . and designed to hinder and frustrate the acquisition of adequate medical care for HCV." (Id. ¶¶ 37, 38.)

Plaintiff further contends that he was denied HCV treatment due to the policies and practices of PHS and ASG. In following these policies, Kort failed to notify him of his disability, refer him to a liver specialist, order a Hepatitis B vaccination, perform physical/mental examinations or consider treatments other than that specifically allowed by the DOC. (Id. ¶ 49.)

According to Plaintiff, Defendants refused to provide him with HCV treatment because his mental illness caused him to fall under the exclusionary criteria of the DOC HCV protocol. As such, DOC policy barred him from receiving treatment unless he signed an agreement form consenting to become a mental health patient, and waiving his privacy rights. (Id. ¶ 40.) Plaintiff refused to do so because he argues that he does not suffer from mental illness and, as such, does not fall within the exclusionary criteria of the protocol. (Id. ¶¶ 44, 45.) He claims that each day he does not receive HCV treatment, he suffers increasing damage to his liver, greater pain and future adverse health consequences. (Id. ¶ 86.) He further alleges that his condition qualifies as a disability, and that he exhausted available administrative remedies even though they were "utterly useless." (Id. ¶¶ 89, 94.)

Plaintiff also maintains that Defendants allowed his confidential medical information to be shared with others by informing various prison personnel of his medical condition and data

3

without his permission in retaliation for his seeking treatment for the HCV. (Id. ¶ 46.) He seeks compensatory, punitive, declaratory and injunctive relief.

On June 15, 2009, the Court issued a Memorandum and Order granting Defendants' motion for summary judgment in this matter. (Doc. No. 348.) Plaintiff seeks reconsideration of this Order.

## II. Discussion

### A. Motion to Hold Case in Suspense

On October 13, 2009, Plaintiff filed a motion requesting that the Court "hold this case in suspense." (Doc. No. 362.) The basis for the request was Iseley's claim that he was in the process of sending all of his property out of the prison because he is to be released soon. He states that he will have no access to the legal materials needed for litigating this action once he does so. (Doc. No. 363.) Plaintiff's motion will be denied for the following reasons. First, there are no further documents he is required to file in this matter. Summary judgment has been entered against him, and the case is closed. While Plaintiff has filed motions seeking reconsideration of the Court's decisions to grant Defendants' summary judgment motions, he has submitted his supporting and reply briefs, and the motion is presently before the Court for consideration at this time. Further, several months have passed since the filing of the motion, and Iseley is no longer confined in prison. He was released in January of 2010, and presumably would now have access to all of his legal materials.

### B. Motion to File Sur-Reply Brief

Before considering Iseley's motion for reconsideration, the Court will address Defendants' motion to submit a sur-reply brief with regard to said motion. (Doc. No. 366.) In

submitting their motion and brief in support thereof, Defendants also attach their proposed sur-reply brief. (Doc. No. 366-3, Ex. A, Sur-Reply Brief.)

In response to Defendants' brief in opposition to the motion for reconsideration, Iseley raises the argument that counsel for Defendants misrepresented the DOC's record retention policy for sick call requests. Defendants seek leave to file a sur-reply to supplement their opposition brief in order to address Iseley's allegation. Pursuant to M. D. Pa. L. R. 7.7, no further briefs following a reply brief are permitted unless leave of court is granted.

In this instance, the Court finds it is proper to allow Defendants the opportunity to address the claim raised by Iseley in his reply brief, and will accept Defendants' sur-reply brief as it is limited to that issue. While Iseley claims that he should then be given the opportunity to reply to any sur-reply filed by Defendants, this is not necessary as both parties have had the opportunity to address this issue.

### C. Motion for Reconsideration

#### 1. Legal Standard

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, the movant must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)(citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is

5

appropriate in instances where the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Rohrbach v. AT&T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in part on other grounds on reconsideration, 915 F. Supp. 712 (M.D. Pa. 1996)(quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983). It may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp.2d 678, 682 (E.D. Pa. 2001). It is not a proper vehicle to attempt to convince the court to rethink a decision it has already made. Such motions also may not be used to give a dissatisfied party a chance to "[change] theories and try again," obtaining a "second bite at the apple." Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995); see also Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002).

  **2. Analysis**

 Iseley basically raises five (5) arguments in moving for reconsideration of the Court's grant of summary judgment in favor of Defendants Kort, PHS, Inc. and ASG, Inc. He first contends that the declaration he submitted in support of his opposition to Defendants' motion should not have been labeled by the Court as "self-serving and conclusory," and that evidence does exist that he did seek treatment while at SCI-Coal for his medical conditions of FM, RA and CFS. He also claims that newly discovered evidence exists to support his claims. In support of his arguments he submits exhibits which he professes support his claims. In reviewing the exhibits, however, the Court finds another declaration by Iseley with additional exhibits that lend

no evidentiary support to his claims. He submits blank sick call request forms that clearly do not create an issue of fact, as well as another declaration authored by himself reasserting his unsupported claims. (Doc. No. 353, Ex. A.) Iseley also reasserts arguments previously considered and rejected by the Court, and attempts to assert a new medical issue involving a soap allergy problem he experienced while confined at SCI-Somerset. Clearly, this new claim in not a part of the instant litigation. Despite his assertions regarding his medical care, Iseley does not come forth with any new evidence warranting reconsideration of the grant of summary judgment. To the extent Iseley bases reconsideration on his argument that Defendants altered his records and misrepresented the DOC's policy with respect to the retention of sick call request slips, his claim in unconvincing. The DOC's policy as set forth in Policy No. 13.2.1 entitled "Access to Health Care" Section 1, Subsection A(8)(7), speaks for itself in providing that "the DC-500s (sick call requests) may be destroyed after the inmate is seen or fails to show as scheduled." (Doc. No. 366-3, Ex. 1.) Further, Iseley has come forth with no evidence that Defendants in any way tampered with his medical records.

Iseley next sets forth several arguments claiming that the doctrine of collateral estoppel has no application in this case. Without unnecessary elaboration, the Court rejects any such argument for the following reasons. On July 9, 2004, this Court entered summary judgment in favor of Defendants Mills, Roemer and Wexford Health Sources, Inc. on the basis that collateral estoppel applied to bar Iseley's amended complaint. The amended complaint was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim against the remaining Defendants. On March 31, 2006, the Court denied Iseley's motions for reconsideration, and he thereafter appealed to the Third Circuit Court of Appeals.

On June 27, 2007, the Court of Appeals issued an opinion affirming in part, vacating in part, and remanding the case to this Court. (Doc. No. 185.) Specifically, the Third Circuit affirmed this Court's finding that collateral estoppel applied to bar the relitigation of Iseley's clams of deliberate indifference to his serious medical needs concerning denial of treatment for his Hepatitis-C, the DOC's protocol for Hepatitis-C treatment and required psychiatric screening, and consent forms for such treatment. The case was remanded with regard to the remainder of Iseley's claims. Id.

On March 5, 2008, this Court issued a Memorandum clarifying the issues for consideration upon remand. (Doc. No. 249.) The issues still remaining before this Court were framed as follows: (1) failure of Defendants to treat Iseley's fibromyalgia, chronic fatigue syndrome and rheumatoid arthritis as constituting cruel and unusual punishment; (2) denial of medical treatment in violation of the Americans with Disabilities Act relating to all of Plaintiff's illnesses; (3) denial of medical treatment in violation of the Equal Protection Clause; and (4) various state law claims.

The Third Circuit Court of Appeals decided all questions regarding the applicability of collateral estoppel to this case in their opinion of June 27, 2007. This Court's application of the collateral estoppel doctrine to bar Plaintiff's Eighth Amendment medical care claims with regard to Hepatitis-C was in accordance with the Third Circuit's decision. As such, Iseley's arguments that collateral estoppel is not applicable to this case are without merit.

In seeking reconsideration Iseley next argues that he was denied his prescribed Hepatitis-C treatment because of his disability, which is Hepatitis-C. This is a new Americans With Disabilities Act argument not raised by Iseley in his amended complaint. Regardless, even if the

Court were to find that Iseley is disabled within the meaning of the ADA, this claim under the ADA would fail as Iseley submits no evidence to support any finding that he was excluded from any program on the basis of his disability. The record clearly established that he was provided with continuous medial care during his confinement at SCI-Coal. Further, it was Iseley who refused to submit to the required psychological evaluation required by DOC policy prior to initiating treatment for Hepatitis-C. For these reasons, his ADA claim would be without merit.

Finally, Iseley attempts to re-package his Equal Protection claim as one set forth against the SCI-Coal Defendants based upon their lack of medical care and treatment. However, there is no question when reviewing the amended complaint that the Equal Protection claim is exclusively set forth against Defendant Roemer, a physician at SCI-Huntingdon. Iseley specifically alleges that Roemer denied him medical care on the basis of his race. (Doc. No. 76, ¶¶ 73, 100.) Iseley cannot now come in on a motion for reconsideration and reassert causes of action against different defendants merely because he was unsuccessful with respect to his earlier claim.

For all of the foregoing reasons, the motion for reconsideration will be denied. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES ISELEY, | : | CIVIL NO. 1:CV-02-2006 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JEFFREY BEARD, et al., | : | |
| Defendants | : | |

## ORDER

**AND NOW,** this 30th day of March, 2010, for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion to Hold Case in Suspense (Doc. No. 362) is **denied**.

2. Defendants' Motion for Leave to File a Sur-Reply Brief with respect to Plaintiff's Motion for Reconsideration (Doc. No. 366) is **granted**. The proposed Sur-Reply Brief attached by Defendants to their motion (Doc. No. 366-3, Ex. A) is accepted by the Court.

3. Plaintiff's Motion for Reconsideration (Doc. No. 352) is **denied**.

                                              S/ Yvette Kane
                                              YVETTE KANE, Chief Judge
                                              Middle District of Pennsylvania